## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA M. WENSLEY and<br>KENNETH WENSLEY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 04-245J |
| v. | ) |
| | ) JUDGE GIBSON |
| DANIEL D. SCOTT and | ) |
| WM. L. NOFZIGER & SONS, INC., | ) |
| | ) |
| Defendants. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the Defendants' Motion in Limine to Exclude Medical Bills (Document No. 22).

The Plaintiffs wish to introduce and the Defendants seek to exclude evidence of Plaintiffs' medical bills related to the vehicular accident alleged in the case *sub judice*. The medical bills at issue include the amount of medical bills paid by the Plaintiffs' insurance carrier, the amount paid by the Plaintiffs and the amount of medical bills still owed by the Plaintiffs. The Defendants wish to preclude use of this evidence at trial and rely upon laws of Pennsylvania, New York and Indiana as being possibly applicable, and argue that under any of these laws, evidence of medical bills must be excluded. As presented by the Defendants, the laws of these three states appear to differ in their potential resolution of this issue.

The Plaintiffs have set forth that Plaintiff-husband has had approximately "$7,200 in medical

benefits" paid by his insurer, that he "owes approximately $18,300 in outstanding medical bills to various medical providers", Plaintiff-wife's insurer "has paid approximately $14,100 in medical benefits" and she "owes approximately $10,400 in outstanding medical bills to various medical providers, and she has paid out-of-pocket medical expenses of approximately $2,500." Plaintiffs' Brief (Document No. 25), p. 2. At the pretrial conference in this matter Defendants stipulated to these amounts, after previously representing them to be different amounts.

## I. Failure to Object at the Time of Deposition

The Plaintiffs first object to the Defendants' motion by arguing that the evidence of medical bills is already present in the record through the deposition of Dr. Kenneth Gentilezza as he referred to them and that the Defendants did not object at that time and may not object now after stipulating that objections should be made at the time of the deposition, as this deposition was to be used at trial. The Plaintiffs are incorrect. The Defendants may raise this objection by means of the present motion in limine in that objections to the admissibility of depositions may be made at the time of trial for any reason that may require exclusion of evidence. FED. R. CIV. P. 32(b). Rule 32(b) is subject to the related subsection (d)(3) of the same rule which indicates that objections as to relevancy and materiality are not waived for failure to make them at the time of deposition "unless the ground of the objection is one which might have been obviated or removed if presented at that time." FED.R.CIV.P. 32(d)(3)(A).

The Court does not believe that had the Defendants objected at the time of Dr. Gentilezza's deposition regarding his reference to medical bills, that the ground for the present motion could have been "obviated." As will be evident from the discussion within, the need for a legal analysis of possible conflicts of law is necessary to resolve this issue and any objection at the time of deposition would only

have served to bring this issue to light earlier, but would not have facilitated its resolution. The motion in *limine* will not be denied based upon this objection by Plaintiffs. The Court will therefore continue its analysis.

## II. Choice of Law Analysis

In consideration that the thrust of the parties' briefs concerns which substantive law of the aforementioned states will apply to this issue, the Court must first conduct a choice of law analysis. Original jurisdiction for this matter is vested in this Court based upon diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332. "It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988)(citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941)). Pennsylvania abandoned the *lex loci delicti* rule for evaluating conflicts of law many years ago and since then has followed a hybrid analysis for choice of law issues combining the Restatement (Second) of Conflict of Laws approach and an "interest analysis." *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21-22, 203 A.2d 796, 805-806 (1964) and *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991). As stated in *Myers v. Commercial Union Assurance Companies*, 506 Pa. 492, 485 A.2d 1113, 1115-1116 (1984) and as recognized in *Carrick v. Zurich-American Insurance Group*, 14 F.3d 907, 909-910 (3d Cir. 1994), the Pennsylvania Supreme Court has summarized its choice of law analysis as follows:

This Court in *Griffith v. United Air Lines, Inc.*, held that in resolving a potential conflict between the application of state laws we must consider the policies and interest underlying the particular issue before the court. *Id.* at 21, 203 A.2d at 805. As further

3

explained in *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966), we must analyze the: extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. *Id.* at 94, 215 A.2d at 682. Furthermore, in evaluating the interests of one jurisdiction over another, we must view the factors qualitatively as opposed to quantitatively, *Cipolla v. Shaposko*, 439 Pa. 563, 267 A.2d 854 (1970).

However, before the Court begins an analysis of a true conflict of laws, the Court must confirm that a true conflict of laws presents itself in the case *sub judice*. The Court must first evaluate the interests underlying "the policies of all interested states" in order to "characterize the case as a true-conflict, false conflict, or unprovided-for case." *Budget Rent-a-Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005)(citations omitted). "A true conflict exists 'when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied.'...'A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.' ...Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. *Lex loci delicti* (the law of the place of the wrong-in this case Pennsylvania) continues to govern unprovided-for cases." *Id.*(citations omitted). A review of the policies behind the state laws at issue in the case *sub judice* establish that this matter is in fact a false conflict, not a true conflict. *Compare Cipolla* (true conflict) *and McSwain* (false conflict), *infra.*[1]

---

[1]Because the Court concludes after "an 'interest analysis' of the policies of all interested states" that this matter presents a false conflict, the Court need not resort to the hybrid analysis for true conflicts of law set forth by the Third Circuit in their analysis of Pennsylvania's choice of law rules. *Budget Rent-a-Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005)

4

A false conflict is presented where an analysis of the policies or interests serving as the bases for the competing state laws results in a conclusion that the application of one state's law would not further the interests or policies of the other state's competing law and, additionally application of the other state's competing law would not adversely affect the interests or policies of the first state's law. *Lacey v. Cessna Aircraft Company, et al.*, 932 F.2d 170, 187 (3d Cir. 1991)(citing *Kuchinic v. McCrory*, 422 Pa. 620, 623-624, 222 A.2d 897, 899-900 (1966) and *Cipolla v. Shaposka*, 439 Pa. 563, 565, 267 A.2d 854, 855 (1970)) *See also McSwain v. McSwain*, 420 Pa. 86, 91-97, 215 A.2d 677, 680-683 (1966). This concept can be more easily understood through use of an example. For instance, in the false conflict situation in *McSwain*, a vehicular accident occurred in Colorado where an infant died and the wife/mother sued the husband/father (all Pennsylvania domiciliaries) on behalf of the deceased infant. In that case, the Pennsylvania Supreme Court applied Pennsylvania law to bar the suit as Pennsylvania law prevented intraspousal suits, a bar established to further the state interest of prevention of "friction between spouses." *Id.* The Pennsylvania Supreme Court found that the applicable Colorado law did not further this interest protected by the immunity and that Pennsylvania's interest in applying this bar to a suit involving *Pennsylvania domiciliaries* was a sufficient basis upon which not to apply Colorado law; the Court also recognized that Colorado's interests in deterring negligent acts and ensuring payment to a local creditor for any services rendered because of the motor vehicle accident would not be affected adversely by the application of the Pennsylvania law barring the suit.[2] *McSwain* at 94-97, 215 A.2d at 682-683.

---

[2]Specifically the Pennsylvania Supreme Court concluded that application of the Pennsylvania law of interspousal immunity was not a "resort to a standard of care less rigorous than that demanded by Colorado of those who use its highways" and, therefore, Colorado's interest in deterring negligence was not affected. *McSwain* at 96, 215 A.2d at 683. Additionally,

In comparison, in the true conflict situation, *Cipolla* addressed the situation where a Delaware driver, operating a Delaware registered vehicle, was transporting a Pennsylvania passenger home when a collision occurred in Delaware; Delaware's law prohibited tort recovery under a guest statute while Pennsylvania permitted recovery by injured guest passengers. *Cipolla* at 564-565, 267 A.2d at 855. The Pennsylvania Supreme Court concluded that a true conflict existed because the state laws were in direct conflict with each other in that Pennsylvania had a "plaintiff-protecting rule" and Delaware had a "defendant-protecting rule." *Cipolla* at 565, 267 A.2d at 855-856.

To put it in other words, in a false conflict, only one state is a "concerned jurisdiction" that is, the state is "truly concerned with the result." *Kuchinic v. McCrory*, 422 Pa. 620, 624, 222 A.2d 897, 899-900 (Pa. 1966). The Pennsylvania Supreme Court analysis in *Cipolla* also discussed a false conflict in the following terms:

"At the outset it might be noted that this case is much more difficult than either *Kuchinic* or *McSwain* for both of those cases presented a false conflict; that is, an analysis of the policies behind the competing laws indicated that in each case the application of one state's law (in *Kuchinic*, Georgia; in *McSwain*, Colorado) would not further those policies, Cavers, the Choice-of-Law Process, 29-30 (1965); *Kuchinic*, *supra* 422 Pa. At 624 n.4, 222 A.2d 897."

*Cipolla* at 565, 267 A.2d at 855-856. One of the clearest explanations of "false conflicts" is summarized in the following language:

"The most notable contribution was made by Brainerd Currie, who, in a series of careful essays, set forth and then illustrated and refined his interest analysis theory for resolving choice-of-law problems. Perhaps his most significant contribution was that he taught us to recognize and isolate the choice-of-law cases which pose a false conflict. A false

the Pennsylvania Supreme Court concluded that the fact of the child's immediate death in *McSwain* did not create a likelihood that "significant debts" were "incurred in Colorado" and thus Colorado's interests in securing payment for any such debts was not offended by application of the Pennsylvania law. *Id.*

6

conflict occurs when, after examining the content and objectives of the laws of states A and B relating to the specific issues, it is found that only state A has an interest in the application of its law and that state B has no interest. It seems clear that the law of state B should not be applied if doing so will not advance any policy of that state and will defeat the policies of state A. In such a case, there is no reason for applying the law of state B except that some rule directs it in the (false) hope of achieving certainty. However, when all of the states have adopted the false conflict technique (as they are in the process of doing), there will be a uniform resolution of these cases--a uniformity founded on a far more rational basis. Among conflicts writers and courts which have tackled the problem, there is virtual agreement concerning the disposition of false conflicts." Couch, Choice-of-Law, Guest Statutes, and the Louisiana Supreme Court: Six Judges in Search of a Rulebook, 45 Tul.L.Rev. 100, 106 (1970).

*Jagers v. Royal Indemnity Co.*, 276 So.2d 309, 311, n. 2 (La. 1973). With this understanding, the Court

reviews the interests of the applicable state law in the case *sub judice*.

The Plaintiffs are New York residents, and Defendant Scott is a resident of Indiana and Defendant Wm L. Nofziger & Son, Inc. (hereinafter "Defendant Corporation") is a resident of Ohio by virtue of being incorporated and operating its principal place of business there.[3] Complaint (Document No. 1) ¶ ¶ 3-5. Defendant Corporation is alleged to have purchased an insurance policy for its driver, Defendant Scott, from Northland Insurance Company and said policy was issued in Indiana. Defendant's Brief (Document No. 24) p. 1. "Northland [Insurance Company] is also licensed to write insurance in New York and Pennsylvania." *Id.* The Plaintiffs' "automobile insurance policy [] was issued [to them] in New York pursuant to New York law." Plaintiffs' Brief (Document No. 25), p. 2. Plaintiff-Wife was operating a New York licensed vehicle owned by her. Complaint, ¶ 8. Defendant Scott was operating a truck owned by Defendant Corporation and licensed in Ohio. Complaint ¶ 10.

---

[3] The Defendants allege in their brief that Defendant Scott is a resident of Ohio and Defendant Corporation is a resident of Indiana, without reference to any specific addresses or documents establishing such residency. The Court will base its analysis on the facts alleged in the Complaint, but recognizes that the differences in residency between the Defendants would not otherwise substantively affect its conclusion that a false conflict exists.

The automobile accident alleged in the Complaint occurred in Pennsylvania. Complaint ¶ 12. The Complaint contains four counts of negligence and four counts of loss of consortium. *See generally*, Complaint.

As cited by the Defendants, Pennsylvania's Motor Vehicle Financial Responsibility Law precludes any right of subrogation by insurers against a plaintiff's recovery from tortfeasors and also prevents recovery from a tortfeasor of any benefits paid to a plaintiff as a medical benefit by his/her insurer. 75 Pa.C.S.A. § § 1720, 1722. It has also been the policy of Pennsylvania courts to prevent the introduction of medical bills into evidence at trial in order to prove damages for pain and suffering. *Carlson v. Bubash*, 432 Pa.Super. 514, 521-522, 639 A.2d 458, 462 (1994).

The Defendants also cite New York state law which provides for a plaintiff who is a "covered person" under its Comprehensive Motor Vehicle Insurance Reparations Act to recover $50,000 in "basic economic loss" from his insurer with the restriction that the plaintiff may not recover this same amount from another "covered person." N.Y. INS. LAW § § 5102(a), 5104(a). Additionally, the New York Supreme Court, Appellate Division, has found that a resident of another state, owning an automobile insurance policy issued in another state, but issued by an insurer licensed to do business in the state of New York, that provides "liability coverage in excess of that required by Vehicle and Traffic Law § 311(4)" would be considered a "covered person" under the New York law. *Nationwide Ins. Co. v. Morigerato*, 215 A.D.2d 994, 995, 627 N.Y.S. 123, 123 (N.Y. App Div. 3rd Dep't. 1995). The Court notes that the Defendants have not provided any information as to the extent of the coverage provided by the automobile insurance policy for Defendant Scott.

New York law further provides for mandatory arbitration between the insurer paying "basic

8

economic loss" for "a covered person" and the insurer of a second "covered person" to the extent the second covered person is liable, "but only if at least one of the motor vehicles involved is a motor vehicle weighing more than six thousand five hundred pounds unloaded or is a motor vehicle used principally for the transportation of persons or property for hire." N.Y. INS. LAW § 5105.

Indiana law prohibits introduction of evidence of collateral source payments from "insurance benefits for which the plaintiff or members of the plaintiffs's family have paid for directly." IND. CODE ANN. § 34-44-1-2(1)(b) (2006). Indiana law indicates that its policy is to prevent a party from gaining more than one recovery for a specific loss:

> The purpose of this chapter is:
>
> (1) to enable the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and
> (2) to provide that a prevailing party not recover more than once from all applicable sources for each item of loss sustained.

IND. CODE ANN. § 34-44-1-1 (2006).

While it appears that the policy and the effect of the Indiana and Pennsylvania laws are similar, Pennsylvania automobile insurance policies must contain at least a $5,000 medical benefit for the insured, *see* 75 PA.C.S.A. § 1711, while Indiana automobile insurance policies appear not to have such a requirement. IND. CODE ANN. §§ 9-25-4-1, 9-25-4-5 (2006). The New York law has a higher threshold on what it terms "basic economic loss," specifically that a "covered person" may not recover up to $50,000 from another "covered person" in an automobile accident as that amount is paid pursuant to the insured's automobile insurance policy. N.Y. INS. LAW. § 5102, 5104. It has also been observed:

> Thus, the no-fault law provides that in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in

the use or operation of a motor vehicle in New York, there is no right of recovery for noneconomic loss, except in the case of serious injury, or for basic economic loss. Thus, where one covered person seeks to recover damages from another covered person for personal injuries sustained in a motor vehicle accident, and the cause of action alleges neither "serious injury" nor loss in excess of "basic economic loss," the action is expressly barred by the limitation provision of the statute.

70A N.Y. JURISPRUDENCE, 2d Ed. § 1819. The Plaintiffs argue that the preclusion of recovery of "basic economic loss" under New York law applies only to negligent use/operation of motor vehicles within the state of New York. *See* MCKINNEY'S INS. LAW § 5104(a) (defining "basic economic loss"); *Federal Ins. Co. v. Barsky*, 267 A.D.2d 275, 276, 700 N.Y.S.2d 57, 58 (N.Y. App. Div. 2nd Dep't. 1999); *McHenry v. State Ins. Fund*, 236 A.D.2d 89, 91, 666 N.Y.S.2d 221, 222 (N.Y. App. Div. 3d Dep't 1997).

With this understanding of the relevant state laws, the Court must evaluate the respective interests of the three states in the case *sub judice* . Clearly, Pennsylvania was the place of the vehicular accident and it possesses the interest to see that injuries occurring within Pennsylvania are remedied. However, with one minor exception,[4] this is the extent of Pennsylvania's interest as none of the parties were residents of Pennsylvania, nor were any of the policies of insurance issued within Pennsylvania. The occurrence of the accident in Pennsylvania is fortuitous and not by the choice of the parties.

New York is the location of the issuance of the Plaintiffs' automobile insurance policy, licensing of the Plaintiffs' vehicle as well as the place of residence of the Plaintiffs and the residence of two medical professionals who have treated the Plaintiffs; and there exist interests in the application of New

---

[4]Although the Court recognizes that treatment was provided for the Plaintiffs by Dr. Kenneth W. Gentilezza of Scranton, Pennsylvania, the interest of Pennsylvania to ensure compensation for its professionals generally is countered by New York's similar interest and adds no weight to an argument for application of Pennsylvania law in light of all of New York's interests.

10

Case 3:04-cv-00245-KRG Document 30 Filed 08/15/06 Page 11 of 17

York law to ensure that its residents are made whole in the aftermath of personal injuries, that their medical professionals are compensated for their services and that insurance policies issued within New York are complied with in accordance with their terms and the applicable laws of New York. This last interest may include the assurance that the Plaintiffs' insurer, as a licensed New York insurer, does not incur a risk that it did not contract to provide for under New York's no-fault automobile insurance law. New York law also provides for binding arbitration among insurers outside of the underlying personal injury action in situations such as the case *sub judice* where the automobile accident involves a tractor trailer transporting property. The policy behind this binding arbitration appears to be to ensure that insurers of commercial vehicles have a responsibility to render certain that their insured drivers are competent operators through requiring payment for expenses by insurers of "covered persons" making claims of "basic economic loss." In the case *sub judice*, New York policy shifts the burden to an insurer of operators of commercial and other qualifying vehicles (such as Defendant Scott's vehicle), to the extent its insured is liable, to meet the expenses incurred by another insurer of a separate covered person, which paid first party benefits to compensate for its insured's injuries suffered as a result of the liability of the operator of the commercial vehicle. The New York law also appears to apply in the opposite manner if, for instance, a car strikes a bus, the insurer of the bus pays first party benefits for its passengers, and then that insurer may require the insurer of the car to engage in binding arbitration to recover the medical bills paid. Therefore, the New York policy facilitates reimbursement between insurance companies for first party benefits paid to the extent of a party's liability.

Indiana has an interest to ensure that the automobile liability insurance policy that provides coverage for Defendant Scott's actions will not be construed in contravention to Indiana policy and law,

11

which disfavors multiple recovery for a specific item of loss. The insured, Defendant Scott, is a resident of Indiana. The Indiana policy was issued for Defendant Scott, apparently through the fact of his employment with Defendant Corporation, an Ohio resident, in essence insuring against liability claims against Defendant Corporation for the actions of Defendant Scott.

All three states' laws are based upon a policy that recovery from third-party tortfeasors in personal injury actions is precluded to the extent that each law provides that a plaintiff's insurer has provided benefits for that plaintiff, with the only difference between the laws being the extent of the benefits provided by the insurers; therefore, there appears to be no conflict of policy on this issue. Nevertheless, the Court cannot ignore the fact that Pennsylvania and Indiana law do not serve the additional interest of the state of New York in requiring arbitration between the insurers in a case such as this. Application of the New York law would not offend the polices of Indiana and Pennsylvania prohibiting multiple recovery, but applying either of the latter laws would not ensure that the interest in binding arbitration found in New York would be served. This interest of New York is especially important considering that the Plaintiffs have made claims under their New York automobile insurance policy, with some of their medical bills having been paid for pursuant to this policy. As a result a false conflict has arisen where the state of New York appears to possess interests in the case *sub judice* that are not served by the laws of Pennsylvania and Indiana in the case *sub judice*, although application of New York law would not offend the interests of Pennsylvania and Indiana and therefore, New York law concerning this matter must be applied.[5]

---

[5]The Court's conclusion that New York law applies to the issue of admissibility of medical bills at the time of trial is not also a conclusion that New York law applies generally to all issues of the case. The process of depecage, that is the application of the "choice of law process" to each specific and distinct issue in a case, has been followed by the Third Circuit

## III.    **Application of New York Insurance Laws**

In application, the Plaintiffs argue that the New York law prohibiting subrogation would only apply to vehicular accidents occurring *within* New York and cite to the language of N.Y. INS. LAW § 5104(a) as interpreted in the cases of *Federal Ins. Co. v. Barsky*, 267 A.D.2d 275, 276 (N.Y. App. Div. 2nd Dep't. 1999) and *McHenry v. State Ins. Fund*, 236 A.D.2d 89, 91 (N.Y. App. Div. 3d Dep't. 1997). The Defendants have cited *Nationwide Ins. Co. v. Morigerato*, 215 A.D.2d 994, 995, 627 N.Y.S.2d 123, 123 (N.Y. App. Div. 3rd Dep't. 1995), which in turn cites *Fireman's Ins. Co. v. Le Compte*, 194 A.D.2d 918, 919, 599 N.Y.S.2d 139, 140-141 (N.Y. App. Div. 3rd Dep't. 1993), for the proposition that subrogation is not permitted when an accident occurs outside of New York between a New York resident, operating a New York licensed and insured vehicle, and a non-New York resident, insured through an insurance policy issued outside of New York, but by an insurer who is also licensed to insure automobiles in New York and carrying the necessary limits of coverage found in New York Vehicle and Traffic Law § 311(4).

A close reading of the *Morigerato* case reveals that the issue there was the definition of "covered person" under New York insurance law and that the non-resident insured was considered a "covered person" because his policy limits exceeded the required limits of § 311(4) of New York Vehicle and Traffic Law and the policy of the insured was issued by an insurer licensed in New York. *Morigerato* at 995, 627 N.Y.S.2d at 123. *See also Aetna Life and Casualty. Co. v. Allstate Ins. Co.*, 207 A.D.2d

---

in its application of Pennsylvania's choice of law rules in an absence of guidance from the Pennsylvania Supreme Court on this issue and it appears that further choice of law analyses may be warranted for future issues in the case *sub judice* absent an agreement among the parties. *See Chemetron Investments Inc., v. Fidelity & Cas. Co. Of New York,* 886 F.Supp 1194 (W.D.Pa. 1994)(citations omitted).

13

984, 984, 616 N.Y.S.2d 838, 838-839 (N.Y. App. Div. 4th Dept 1994)(recognizing that where the limits contained in an out-of-state automobile insurance policy equaled or exceeded New York's required limits, the out-of-state policy holder qualified as a "covered person"). As a result, the provisions of §  5104(b)[6], concerning permitted liens in actions between a covered person and a non-covered person were inapplicable; this case did not resolve any conflict regarding the relevant section § 5104(a) concerning the recovery of "basic economic loss." On the other hand, *Barsky and McHenry* stand for the proposition that recovery under § 5104(a) for "basic economic loss" is restricted to cases involving "negligence in the use or operation of a motor vehicle in this state."

Thus, the Plaintiffs argue that subrogation by an insurer is permitted for 1) recoveries by an insured in civil actions outside of New York (*see* § 5104(a)) and 2) recoveries by a covered person against a non-covered person (*see* § 5104(b)), and therefore, because the relevant insurance laws of New York are inapplicable and subrogation by insurers is permitted, the Plaintiffs are entitled to seek, prove and recover losses incurred through the payment of medical bills at trial. Plaintiffs' Brief, pp. 4-5. The Plaintiffs also cite to an opinion of the Attorney General of New York, which concludes that § 5105(a) is inapplicable to any recovery from an out-of-state non-covered person because a "covered person" is a person with an motor vehicle insurance policy issued in New York. Op. N.Y. Att'y Gen. 03-04-35 (2003), 2003 NY Insurance GC Opinions LEXIS 147. The Attorney General's opinion goes on to conclude that the insurer of such a covered person would be permitted to assert a lien against any

---

[6]N.Y. Ins. Law § 5104(b) reads in pertinent part: "In any action by or on behalf of a covered person, against a non-covered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries has a lien against any recovery to the extent of benefits paid or payable by it to the covered person."

recovery made by the covered person to the extent of the first part benefits paid by the insurer. *Id.*

First, it is recognized that the cited Attorney General's opinion conflicts with the New York Appellate Division's ruling in *Morigerato*. This Court follows the reasoning of *Morigerato*, and concludes that Defendant Scott would be considered a "covered person" if his liability policy included the required coverage of § 311(4) as his insurer is licensed to do business in New York. The actual limits of Defendant Scott's insurance policy are not within the record before the Court. However, if that policy has limits of what would be considered "basic economic loss" under New York law of at least $50,000, § 5104(b) would not be applicable. Nevertheless, even if both Defendant Scott and the Plaintiff-Wife are considered "covered persons," by the fact that they are operators involved in a motor vehicle accident outside of New York, § 5104(a) would not bar recovery of "basic economic loss" by the Plaintiffs, since § 5104(a), as is clear from its language and the analyses of *Barsky and McHenry*, does not apply to vehicular accidents between covered persons arising *outside* of New York.

Interestingly, if both Defendant Scott and Plaintiff-Wife are considered "covered persons" then the provisions for settlement between insurers under § 5105 would apply even though the accident occurred in Pennsylvania because § 5105(a) applies when an insurer is liable for first party benefits, which the Plaintiffs' insurer would be under § 5103(a)(2)(ii) (concerning first party benefits to named insured and household members for loss arising from operation of vehicle outside of New York). Such a situation would seem to present an anomaly under New York law that would permit subrogation by the Plaintiffs' insurer against the Plaintiffs should they recover from the Defendant pursuant to § 5104(a) and also permit settlement with Defendant Scott's insurer through binding arbitration for first party benefits paid by the Plaintiffs' insurer to the Plaintiffs to the extent Defendant Scott would have

15

been liable. However, upon further review, § 5105(a) is inapplicable in the case *sub judice* if the Plaintiffs are permitted to seek recovery for their medical bills because § 5105(a) applies when recovery against another covered person was not permitted. The pertinent language reads "any insurer...has the right to recover the amount paid from the insurer of any other covered person to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action at law." N.Y. INS. LAW § 5105(a).

Therefore, under either scenario, namely Defendant Scott being a "covered person" or not being a "covered person," the Plaintiff may seek recovery for "basic economic loss" in this Court as the relevant New York statutes do not apply and New York state common law rights would not be abrogated under the present circumstances. *See Barksy, supra* and *Morgan v. Bisorni*, 100 A.D.2d 956, 956-957, 475 N.Y.S.2d 98, 100 (N.Y. App. Div. 2nd Dep't 1984). If the Plaintiffs do obtain a favorable verdict and are given an award, the manner of recovery by the Plaintiffs' insurer for benefits already paid to the Plaintiffs under either scenario must be through subrogation and not any settlement between insurers through binding arbitration pursuant to § 5105(a), as § 5105 applies only when a defendant would not have to pay damages as a result of a civil action. *See* N.Y. INS. LAW §§ 5104(a), 5105(a).[7] Since the Defendants are alleged to be liable for the Plaintiffs' alleged injuries, and if such allegations are proven, the Defendants would have to pay the damages as found by a jury in this civil action, thus taking the circumstances of the case *sub judice* out of the conditions for settlement between insurers

---

[7]For example, New York law would preclude the recovery of "basic economic loss" as in the case of payment of medical bills under the Plaintiffs' policy had the Plaintiffs' accident occurred in New York with another New York licensed vehicle and resident-operator who was a "covered person."

16

found in § 5105(a).

In light of the fact that this Court concludes that the Plaintiffs may introduce evidence of any of their medical bills at trial, therefore, it is only proper that such evidence be used to prove economic damages as well as non-economic damages. In fact, as cited by the Plaintiffs, New York law permits use of "basic economic loss" at trial despite one's inability to recover such loss because of its relevance to "non-economic loss": "(c) Where there is no right of recovery for basic economic loss, such loss may nevertheless be pleaded and proved to the extent that it is relevant to the proof of non-economic loss." N.Y. INS. LAW § 5104(c).

**AND NOW**, this 15th day of August 2006, this matter coming before the Court on the Defendants' Motion in Limine to Exclude Medical Bills (Document No. 22), in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Motion is DENIED and evidence of the Plaintiffs' medical bills, whether paid by their insurer, by themselves or if said bills are still outstanding, shall be permitted at the time of trial to prove economic and non-economic damages.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

17